IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

**KIMBERLY ANN SMITH**                                       **PLAINTIFF**

VS.                          No.  3:20-cv-00364 PSH

**KILOLO KIJAKAZI, Acting Commissioner,**
   **Social Security Administration**                   **DEFENDANT**

**ORDER**

Plaintiff Kimberly Ann Smith ("Smith") appeals the final decision of the Commissioner of the Social Security Administration (defendant "Kijakazi") to deny her claim for Supplemental Security Income ("SSI") and Disability Insurance benefits ("DIB").  Smith maintains the Administrative Law Judge ("ALJ") erred in three ways: (1) by failing to give good reasons for rejecting the opinion of treating physician Dr. Randall Hunt  ("Hunt"); (2) by failing to properly analyze her credibility; and (3) by failing to properly determine her residual functional capacity ("RFC").  The parties have ably summarized the testimony given at the administrative hearing conducted on March 30, 2020. (Tr. 35-60).  The Court has carefully reviewed the record, including the medical records, to determine whether there is substantial evidence in the administrative record to support Kijakazi's decision.  42 U.S.C. § 405(g).  The

relevant period under consideration is from June 1, 2018, the alleged onset date, through March 30, 2020, the date of the ALJ's decision.

*The Administrative Hearing:*

In response to questions posed by the ALJ, Smith stated she was 38 years old and lived with her spouse and two children, ages 14 and 16. She was 5' 10", and weighed 390 pounds. Smith has a high school education, has taken some college courses, and is a certified nurse's aide. Smith last worked in May of 2018 as a residential mental health trainer. Smith described her last job: "I assisted mental health members with their daily activities of living, cooking for them, helping them clean, and taking care of their every day activities." (Tr. 42). This job required her to be on her feet most of the day, and required substantial lifting. Prior to her last job, Smith worked as a certified nurse's aide in two different settings. Smith indicated she left her last job when she could no longer lift her patients and experienced balance problems and shoulder pain.

Asked to identify problems preventing her from working, Smith cited several impairments: degenerative disc disease of her cervical spine, which was being treated with injections, home health, physical therapy, and pain medications; pulmonary hypertension, being treated with medication and scheduled for a graft; sleep apnea, where treatment with a CPAP has been helpful, but some fatigue and sleepiness

remains; obesity, which places a strain on her; left knee problems, treated with injections (a fifth injection scheduled shortly after the hearing); right knee problems, treated with two injections; degenerative disc disease of lower back, treated with epidural and steroid injections; congestive heart failure, treated with medication and scheduled for a graft; and mental health issues, treated with medication and counseling. Smith also stated she used a cane, prescribed by Hunt in the spring of 2019.

Smith's attorney questioned her further. In response, she described limited daily activities. She said she cooked once a week and did not do laundry. She helped her teenage children do the dishes and shopping. Weekly trips to the doctor, massage doctor, and grocery store were routine. Smith stated she could not sit for six hours in a work day, and that it was difficult "to lay or stand." (Tr. 51). She estimated she could sit for thirty minutes, using pillows, before needing to change positions, and that she could stand for "a few minutes." (Tr. 52). She allowed that her knee injections were beneficial but that her back injections did not provide long-term relief. She also noted her use of a nebulizer, twice daily, and daily use of inhalers. Finally, she stated she also struggled some with incontinence.

Upon further questioning by the ALJ, Smith stated she attended hometown sporting events of her children but did not make road trips. She also helps her

children with their homework. Finally, she described using her cane often, except when she had something to lean against, such as shopping with a cart. (Tr. 40-56).

Stacy McKisick ("McKisick"), a vocational expert, testified. The ALJ posed a series of hypothetical questions, the first of which asked McKisick to consider a hypothetical worker of Smith's age, education, and experience, who could perform sedentary work with the following restrictions: she could never climb ladders, ropes, or scaffolds; could occasionally climb ramps or stairs; could occasionally stoop, crouch, kneel, and crawl; must avoid concentrated exposure to extreme cold; must avoid concentrated exposure to irritants such as fumes, odors, dust, and poorly ventilated areas; and must avoid concentrated exposure to excessive vibration. McKisick responded that such a worker could not perform Smith's past relevant work. McKisick testified, however, that such a worker could perform the jobs of food and beverage order clerk, and stuffer. The ALJ followed with a series of hypothetical questions involving the use of a cane at these jobs. McKisick indicated the jobs could be performed even if a worker required a cane for all ambulation and for balance. (Tr. 57-59). Smith's attorney did not question McKisick but pointed out that Hunt's medical source statement restricted Smith so that even the cited jobs would not be available. The ALJ agreed that Hunt's medical source statement, "if that's accurate," would limit Smith to less than sedentary work. (Tr. 59).

*ALJ's Decision:*

In his March 30, 2020, decision, the ALJ determined that Smith had the following severe impairments: degenerative disc disease of the cervical spine with radiculopathy, pulmonary hypertension, hypertension, sleep apnea, morbid obesity, left knee degenerative joint disease with chondromalacia, congestive heart failure, arthritis, lumbar stenosis with levoscoliosis, and dyspnea.

The ALJ discussed the following impairments which he deemed non-severe: gastroesophageal reflex disease (GERD), vitamin D deficiency, insomnia, hyperkalemia, chronic pain syndrome, blood coagulation disorder, and acute left otitis media. The ALJ considered the "paragraph B" criteria regarding mental impairments, finding Smith had a mild limitation in understanding, remembering, or applying information, a mild limitation in interacting with others, a mild limitation in concentrating, persisting, or maintaining pace, and no limitation in adapting or managing oneself.

The ALJ found that Smith did not have an impairment or combination of impairments that met a listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ expressly considered if Smith met Listing 1.02, 1.03, or 4.02. The ALJ also noted Smith's obesity, indicating he had factored this into the conclusions reached in his decision.

The ALJ further determined that Smith had the residual functional capacity ("RFC") to perform sedentary work with the restrictions which mirrored those detailed in the initial hypothetical question posed to McKisick. The ALJ thoroughly discussed the medical evidence, beginning with treatment notes from December 2017, about seven months before the onset of the relevant period. He determined that Smith's statements concerning the intensity, persistence and limiting effects of her symptoms were "not entirely consistent with the medical evidence and other evidence in the record." (Tr. 29). The ALJ addressed Hunt's August 2019 medical source statement:

> In August 2019, Randall Hunt, M.D., submitted a medical source statement regarding the claimant's physical limitations (Exhibit 15F). Dr. Hunt opined the claimant could lift and carry less than 10 pounds (Id). She could sit for less than 2 hours and stand and/or walk for less than 2 hours in an 8-hour workday (Id). She could never climb, balance, stoop, kneel, crouch, and bend (id). She would need frequent rest periods and longer breaks (Id). She would need an opportunity to shift positions from sitting or standing/walking at will (Id). She should avoid moderate exposure to extreme cold and sunlight (Id). She should avoid all exposure to extreme heat, high humidity, fumes, odors, dusts, gases, perfumes, soldering fluxes, solvents, and chemicals (Id). She would likely be absent from work more than 3 days per month (Id). This opinion is not supported by and consistent with other medical records. It is also based upon the claimant's subjective complaints. The opinion fails to identify what conditions cause the limitations and also notes that the claimant is unable to perform any postural functions which would leave her bed-ridden which is not the case. Dr. Hunt is a primary care physician and not a specialist the his [sic] limitations are not even consistent with his treatment notes (Exhibits 1F/4, 8, 12, 15; 11F/101; 16F/6 and 21F). Additionally, the opinion is not consistent with the objective testing or the claimant's activities of daily living (Exhibits 2F/8; 3F/6, 44, 46, 63; 9F/16, 19; 10F/4-5, 12, 17; 12F/15, 17, 18, 20;

6

>13F/7; 22F/12, 15) For the same reasons discussed regarding the State agency finding, I find Dr. Hunt's opinion of no persuasive value (*See* Exhibits 2E, 3E, 12E, 13E, 2F/7-8, 10, 3F/56-61, 9F/16, 19, 21, 97, 99, 10F/12, 17-21, 11F/98-101, 12F/4-9, 13F/3-7, 16F/5-6, 17F, 19F/4-9, and Hearing Testimony).

(Tr. 21-22).

The ALJ also considered the opinions of the state agency experts, who opined that Smith could perform sedentary work. The ALJ found these opinions consistent with and supported by the medical records, and therefore "persuasive as it pertains to the claimant's sedentary range of exertion." (Tr.21). However, the ALJ did not fully embrace the state experts' opinions, as he added restrictions beyond the full range of sedentary work (the postural and environmental restrictions contained in the first hypothetical question). The ALJ determined that Smith could not perform her past relevant work. However, relying upon McKisick's testimony, the ALJ found Smith could perform other sedentary work in the national economy. Accordingly, the ALJ concluded she was not disabled. (Tr. 10-24).

*Claim One – ALJ Error in Assessing Hunt's Opinions*

Smith contends the ALJ failed to comply with the relevant regulations for evaluating medical opinion evidence when considering the opinions of treating physician Hunt, who offered his opinions in August 2019.

The regulations governing the consideration of the medical opinions were

revised for claims filed on or after March 27, 2017.  Smith filed her claim on August 2, 2018.   The new regulations eliminated the "long-standing 'treating physician' rule." *See Fatuma A. v. Saul*, 2021 WL 616522, 5 (D. Minn. 2021), report and recommendation adopted, 2021 WL 615414 (D. Minn. 2021).  The regulations now provide the following:

> ... Under the new regulatory scheme, the Commissioner "will not defer or give any specific weight, including controlling weight, to any medical opinion(s)," including those from treating physicians. 20 C.F.R. 404.1520c(a). Instead, ALJs will determine the persuasiveness of each medical source or prior administrative medical findings based on supportability; consistency; relationship with the claimant; specialization; and any other factor that tends to support or contradict a medical opinion. 20 C.F.R. 404.1520c(a), (c). ALJs are required to "explain" their decisions as to the two most important factors—supportability and consistency. 20 C.F.R. 404.1520c(b)(2). The "more relevant the objective medical evidence and supporting explanations presented" and the "more consistent" a medical opinion is with evidence from other medical and non-medical sources, the more persuasive the opinion should be. 20 C.F.R. 404.1520c(c)(1)-(2).
> 	The new articulation requirements are meant to "provide individuals with a better understanding of [the Commissioner's] determinations and decisions" and "provide sufficient rationale for a reviewing adjudicator or court." Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 FR 5844-01, at 5854, 5858 (January 18, 2017). ...

*See Phillips v. Saul*, 2020 WL 3451519, 2 (E.D. Ark. 2020) (Deere, MJ).

The new regulations require the ALJ to discuss, at a minimum, the supportability and consistency of a medical opinion.  He did so. The paragraph from the ALJ's decision, quoted above, addresses both the supportability and consistency

of Hunt's opinions, and amply explains why the ALJ deemed the opinions unpersuasive.

Smith faults the ALJ's reasoning in several ways. For example, she contends that Hunt's opinion, as a primary care physician, should not have been discounted simply because he was not a specialist. While status as a specialist is one factor which may be considered under the regulations, this factor is not one of the two factors which *must* be addressed – supportability and consistency. Although the ALJ mentions in passing that Hunt is not a specialist, the treatment of Hunt's opinions did not hinge on this fact.

Smith also contends the ALJ erred by failing to point to specific treatment notes, objective testing, and daily activities which were inconsistent with Hunt's opinions. There is no merit in this argument. The ALJ cites to numerous treatment notes of Hunt and other physicians, to numerous objective studies, including MRI's and other scans, and to Smith's own testimony of daily activities. The objective imaging studies cited by the ALJ typically showed normal results, with the exception of degenerative changes of Smith's left knee and lumbar spine. (Tr. 656, 661, 793-794). In addition, Hunt's checklist medical source statement does not cite objective imaging studies as the basis for his opinions. Rather, Hunt indicates that his findings are based upon "diagnosis of cervical spine degeneration and pulmonary

9

hypertension." (Tr. 814).

In summary, the ALJ was tasked with addressing Hunt's opinions, and specifically charged with squarely considering the supportability and consistency of the opinions. The ALJ complied with the regulatory requirements, and there is no merit to Smith's first claim.

*Claim Two – ALJ Error in Assessing Smith's Credibility*

As part of assessing the claimant's RFC, the ALJ is required to evaluate her subjective statements. *See Pearsall v. Massanari*, 274 F.3d 1211 (8th Cir. 2001). The ALJ does so by determining whether the claimant has a medically determinable impairment that could reasonably be expected to produce pain or other symptoms and, if so, evaluating the intensity, persistence, and limiting effects of the pain or other symptoms. *See* Social Security Ruling ("SSR") 16-3p. In making the latter evaluation, the ALJ must consider all the evidence, including information about the claimant's prior work record, and evidence of the following factors:

> (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the claimant receives or has received for relief of pain or other symptoms; (6) any measures other than treatment a claimant uses or has used to relieve pain or other symptoms . . . ; and (7) any other factors concerning a claimant's functional limitations and restrictions due to pain or other symptoms.

*See* SSR 16-3p. The ALJ is not required to explicitly discuss each relevant factor. *See Goff v. Barnhart*, 421 F.3d 785 (8th Cir. 2005).

As previously noted, the ALJ found that Smith experienced the symptoms she alleged but also found her symptoms were "not entirely consistent with the medical evidence." (Tr. 20). In reaching this conclusion, the ALJ cited the objective medical evidence, which is clearly a relevant factor in the subjective allegation analysis. The ALJ noted that treatment records often recorded Smith's symptoms as mild. Treating records also showed her to have full strength and to ambulate normally. Further, the ALJ cited periods of improvement during the relevant period, as well as some progress with physical therapy. Smith contends that the ALJ should have focused more on her use of medication, and her frequent visits to doctors, including specialists. While Smith would no doubt have weighed the relevant factors differently, the ALJ did not err in his analysis. It is worth remembering that the ALJ credited Smith's subjective allegations to a degree, resulting in his rejection of the state agency physicians' opinions that Smith could perform the full range of sedentary work. The ALJ's RFC assessment of sedentary work with numerous restrictions, therefore, was consistent with some of the subjective allegations of Smith. In light of the imaging studies and the varying physical examination results, the Court finds no error in the ALJ's consideration of the objective medical evidence.

Smith also faults the ALJ for his assessment of her daily activities and her work history.[1] The ALJ described Smith's daily activities as mostly intact, and accurately noted Smith's ability to drive and engage in family activities. While Smith disagrees with the ALJ's analysis, her daily activities are a valid factor to be considered. The Court's task is not to review the record and arrive at an independent decision, nor is it to reverse if some evidence supports a different conclusion. The test is whether substantial evidence supports the ALJ's decision. *See, e.g., Byes v. Astrue*, 687 F.3d 913, 915 (8th Cir. 2012). Overall, the evaluation of Smith's assertions was adequate and supported by substantial evidence.

*Claim Three – ALJ Error in Assessing RFC*

It "is the ALJ's responsibility to determine a claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own descriptions of his [or her] limitations." *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001). Smith contends there is a lack of medical evidence to support the ALJ's RFC conclusion, in part because the ALJ did not factor her morbid obesity into the RFC equation. As previously noted, the ALJ did address Smith's obesity in his decision. Smith simply disagrees with the ALJ's

---

[1] The failure to discuss Smith's work history is not fatal to an otherwise appropriate assessment of her subjective statements. *See Goff v. Barnhart*, 421 F.3d 785 (8th Cir. 2005).

decision in this regard, arguing he should have included obesity in the hypothetical questions posed to McKisick. The ALJ adequately explained his decision concerning Smith's obesity, and was under no obligation to formulate the hypothetical questions in a different fashion. The ALJ's RFC determination was a culmination of his analysis of the objective medical evidence and Smith's credibility, two areas already addressed in this Order. There was no error in either of these areas, and the RFC conclusion was built upon the foundation of these determinations. Here, the ALJ properly sorted through the medical records and other relevant evidence. He was not bound to adopt the view of any particular medical provider, nor was he is not bound to find disability based upon Smith's subjective statements. In this instance, the RFC acknowledged Smith's impairments, at least in part, by restricting her to less than the full range of sedentary work. This included allowances for her significant knee problems. Substantial evidence supports the ALJ's weighing of the evidence and the resulting RFC decision.

In summary, the Court finds no merit to the claims advance by Smith. The ultimate decision of Kijakazi was supported by substantial evidence.

IT IS THEREFORE ORDERED that the final decision of Kijakazi is affirmed and Coffman's complaint is dismissed with prejudice.

IT IS SO ORDERED this 20th day of January, 2022.

_____
UNITED STATES MAGISTRATE JUDGE